IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JOSE MEDINA RAMOS,<br>AIDA TIRADO SALTARES AND THE<br>CONJUGAL PARTNERSHIP COMPRISED<br>BETWEEN THEM,<br><br>　　　　　Plaintiffs,<br><br>　　　　　v.<br><br>ROM MOSCHETTA CAROLYN, ROSE<br>MARIE DEPETRILLO AND THE<br>CONJUGAL PARTNERSHIP COMPRISED<br>BETWEEN THEM,<br><br>　　　　　Defendants. | CIVIL NO. 10-1911 (CVR) |

**OPINION AND ORDER**

**INTRODUCTION**

On September 21, 2010, Plaintiffs José Medina Ramos ("Medina"), his wife Aida Tirado Saltares ("Tirado") and their conjugal partnership, filed the present case against Defendants Ron Moschetta Carolyn ("Moschetta"), his wife Rose Marie Depetrillo ("Depetrillo") and their conjugal partnership, alleging breach of contract, unjust enrichment, bad faith and dolus ("dolo") and the resulting damages as a consequence of the sale of a two story building (the "building") located in Rincón, Puerto Rico. On February 18, 2011, Defendants answered the complaint, which included a counterclaim for breach of contract, and which was timely answered by Plaintiffs. On May 15, 2013, the parties consented and the case was referred to a U.S. Magistrate Judge for further proceedings, including the entry of final judgment (Docket Nos. 26 and 27).

On August 4, 5, and 6, 2014, a jury trial was held and the jury found for Plaintiffs and against Defendants, and awarded Plaintiffs a total of $125,000.00, divided as follows: $115,000.00 for the initial payment Plaintiffs gave to Defendants, and $10,000.00 for

Plaintiff Tirado's emotional damages. (Docket No. 71). The jury did not award damages to Plaintiff Medina.

Before the Court now is Defendants' "Motion for Judgment as a Matter of Law Setting Aside the Jury's Verdict, or in the Alternative, a New Trial, or in the Alternative for Remittitur." (Docket No. 74). On November 3, 2014, Plaintiffs filed their response in opposition thereto. (Docket 79), which Defendants replied to on November 26, 2014. (Docket No. 84). For the foregoing reasons, Defendants' motion is DENIED.

## LEGAL ANALYSIS

In order to properly address Defendants' arguments, the Court briefly summarizes the salient evidence presented at trial.

At the outset, the Court notes there is no controversy that Defendants placed for sale the building in Rincón, Puerto Rico, and that Plaintiffs and Defendants entered into negotiations for the purchase of the building. *Joint Exhibit 1* shows that Defendant Moschetta offered to self-finance the sale of the building by offering it to Plaintiffs for $575,000.00.

*Joint Exhibit 2* is a memorandum drafted by notary public Domingo Bayrón to Defendant Moschetta regarding the cancellation of the existing mortgage note on the building ($300,000.00) and the requirement to retain a 12.5% portion of the profit (or $20,312.50) as a sales tax in the execution of the deed of sale to Plaintiffs.

*Joint Exhibit 3* is the contract for sale and mortgage (which was entirely drafted by Defendant Moschetta), and which covered the duties of each of the parties for the sale and mortgage of the building. The contract was signed by Defendants Moschetta and Depetrillo, as well as Plaintiffs Medina and Tirado. The given date of the contract was March 31, 2007.

José Medina-Ramos, et al v. Ron Moschetta-Carolyn, et al
Civil No. 10-1911 (CVR)
Opinion and Order
Page 3

Under said contract, Defendants would convey title to Plaintiffs and would cancel the existing mortgage on the building. Also under the terms of the contract, Defendants would finance the sale of the building to Plaintiffs by taking a mortgage for $460,000.00 at an interest rate of 8.75% annually, with monthly payments of $3,995.00 for twenty years. There is no controversy that Plaintiffs signed the contract and sent it to Defendants, along with the $115,000.00 initial payment, and that Plaintiffs thereafter made payments from June 2007 until April 2008, pursuant to the terms of contract. This was expressly admitted by Defendants in their motion. (Docket No. 74, p. 10).

*Joint Exhibit 5* shows that on April 6, 2007, Defendant Moschetta sent to Plaintiffs a corrected breakdown of the mortgage payments that they were to send him, specifically, payments of $4,065.07 a month for the next twenty years. The evidence was clear that Plaintiffs accepted that modification, and that the monthly payments were made in the amount of $4,065.07.

*Joint Exhibit 6* showed that on or about May 13, 2007, Defendant Moschetta wrote to Plaintiffs telling them that "…[i]t makes sense for you to apply for your own mortgage on the building at this time…" This was after the Defendant had kept the $115,000.00 initial payment Plaintiffs had made, and had failed to cancel the existing mortgage on the building.

Plaintiff Tirado testified that Defendant Moschetta told her that he would no longer finance the sale and that Plaintiffs needed to obtain their own financing in order for the transfer of title to take place. There is no controversy that in trying to salvage the purchase of the building and their initial investment, Plaintiffs applied to the bank that had the first mortgage on the building, who declined their loan application. See, *Joint Exhibit 9*.

Defendant Moschetta testified he never cancelled the first mortgage on the building, this in spite of the fact that it was his obligation to do so under the sales contract. On the other hand, Plaintiffs testified Defendants never appeared before a notary public in Puerto Rico to execute a notarial deed to transfer title to the building to Plaintiffs, which stands in stark contrast to the evidence presented attesting to the fact that, when Defendants first acquired the building, they executed a proper notarial deed before notary Domingo Bayrón. Indeed, attorney Bayrón testified he had advised Defendant Moschetta of the need to cancel the $300,000.00 mortgage in order to transfer title to the Plaintiffs. Said notarial deed was introduced into evidence and presented to the jury, who had the opportunity to compare the sales contract executed by the parties in this case (*Joint Exhibit 3*) versus the notarial deed by which Defendant Moschetta acquired his title to the building. (*Joint Exhibit 10*). Furthermore, there was no controversy that Defendants did not appear in Puerto Rico to execute the same type of notarial deed by which they acquired title, which was necessary in order to transfer title to Plaintiffs.

Finally, Plaintiff Tirado also testified as to the many times she requested that Defendant Moschetta come to Puerto Rico to execute the notarial deed and to pay off the first mortgage. She further testified as to the emotional damages Defendants' breach of contract caused her.

**A.     Request for Judgment as a Matter of Law.**

The standard for setting aside a jury verdict pursuant to Federal Rule of Civil Procedure 50(b) is a stringent one, namely, the Court "…must examine the evidence in the light most favorable to the plaintiff and determine whether there are facts and inferences reasonably drawn from those facts which lead to but one conclusion -- that there is a total failure of evidence to prove plaintiff's case". Mayo v. Schooner Capital Corp., 825 F.2d 566,

José Medina-Ramos, et al v. Ron Moschetta-Carolyn, et al
Civil No. 10-1911 (CVR)
Opinion and Order
Page 5

568 (1st Cir. 1987). In reviewing the record, the trial court will evaluate neither the credibility of the witnesses nor the weight of the evidence. Santiago Negrón v. Castro-Dávila, 865 F.2d 431, 445 (1st Cir. 1989). That is a matter entirely for the jury. Even though the Court draws all rational inferences from the facts in favor of the plaintiff, "the plaintiff is not entitled to inferences based on speculation and conjecture". Ferrer v. Zayas, 914 F.2d 309, 311 (1st Cir. 1990).

Furthermore, a non-moving party who bears the burden of proof, as Plaintiffs do in this case, must have presented "more than a mere scintilla of evidence in its favor" to withstand a motion for judgment as a matter of law. Invest Almaz v. Temple-Inland Forest Prod. Corp., 243 F.3d 57, 76 (1st Cir. 2001); see also, Peguero-Moronta v. Santiago, 464 F.3d 29 (1st Cir. 2006); Bonilla v. Volvo Car Corp., 150 F.3d 62 (1st Cir. 1998) (credibility issues will be resolved in favor of the jury verdict).

At the outset, the Court notes the arguments presented by Defendants are flawed insofar as they do not account for the uncontroverted fact that: (1) they failed to transfer title through a public document; (2) they failed to pay off the first mortgage as stipulated in the signed contract; and (3) reneged on their obligation to self-finance the sale, as they compelled Plaintiffs to seek independent financing with the bank. Indeed, on page 6 of Defendants' motion, they admit they never completed the formality of executing the corresponding public deed. This admission corroborates the evidence presented during the trial, that showed a possible breach of Defendants' duty to transfer title. The testimony of Plaintiffs Medina and Tirado was clear as they attempted to have Defendant Moschetta come to Puerto Rico to execute the public deed, but he failed to do so.

Thus, the evidence presented showed Defendants could have breached the contract, and therefore a reasonable jury was entitled to rely on this fact in finding for Plaintiffs.

Furthermore, regarding the duty to cancel the existing mortgage under the contract, evidence was also presented that Defendants failed to cancel such mortgage and that this was Defendants' responsibility under the contract. The Court finds the jury was also entitled to rely on such failure to ultimately find for Plaintiffs.

In an attempt to overturn the jury's verdict, Defendants nevertheless argue they provided financing for the sale. This argument, however, is contradicted by the evidence, and further, was negated by the jury when it exercised its fact-finding role during the trial. Defendants argue "there is no controversy that financing was agreed upon" and "plaintiffs' paid the $115,000 deposit and ... started making payments ...from June 2007 until April 2008". They then point out that in a letter dated May 13, 2007, Defendant Moschetta advised Plaintiffs as to the desirability of obtaining financing through a bank. (*Joint Exhibit 6*). Defendants then posit that "... if plaintiffs had obtained financing through a bank, the sales and mortgage transaction would have been recorded in a deed before a Notary Public and the consummation of the contract would have run its complete course". The jury, however, heard this conflicting testimony and made a credibility determination - as was its job to do. With the evidence presented, the Court cannot find that their decision to credit Plaintiffs' version over Defendants' was based on a "total failure of evidence". See, Mayo v. Schooner, 825 F.21d at 568.

In sum, contrary to Defendants' position that the evidence could not sustain a verdict of breach of contract in Plaintiffs' favor, the Court finds the evidence presented could well indicate that Defendants breached the contract by failing to comply with their contractual duties to: (1) transfer title; (2) cancel the first mortgage; and (3) self-finance the sale. Because there is sufficient evidentiary basis to sustain a jury verdict in favor of Plaintiffs, Defendants' arguments for judgment as a matter of law must fail and is therefore DENIED.

### B. Request for a New Trial.

The decision to grant a new trial is squarely within the trial court's discretion. Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 26, 101 S.Ct. 188, 190-91, 66 L.Ed.2d 193 (1980). In order to determine whether or not to grant a new trial, the Court must examine: (1) whether the weight of the evidence fails to support the verdict issued by the jury, thereby producing a manifest miscarriage of justice; and (2) whether the credibility of witnesses fails to support the verdict entered with the same consequences. Bogosian v. Mercedes-Benz of North America, 104 F. 3d 472 (1st Cir. 1997).

Since the jurors are the ultimate triers of fact, "the trial court is especially reluctant to order a new trial when the verdict rendered rested upon the jury's determination of the credibility of witnesses". Raybourn v. San Juan Marriott Resort and Stellaris Casino, 259 F.Supp.2d 110 (D.P.R. 2003). Therefore, the Court may not upset the jury's verdict merely because he or she might have decided the case differently. "Only an abuse of discretion will trigger reversal of a denial of a motion for new trial". Wells Real Estate Inc., v. Greater Lowell Board of Realtors, 850 F.2d 803, 810 (1st Cir. 1988); see also, Keeler v. Hewitt, 697 F.2d 8, 11 (1st Cir. 1982) ("a jury's verdict on the facts should only be overturned in the most compelling circumstances"). The Court finds no extraordinary conditions are present in the instant case that warrant such a remedy.

Defendants assert the weight of the evidence failed to support the verdict issued by the jury, thereby producing a manifest miscarriage of justice which warrants a new trial, because it was Plaintiffs who breached both transactions by not complying with the established payment terms. The Court disagrees. As previously discussed, the evidence presented showed that Defendants: (1) did not comply with the transfer of the title; (2) did not comply with the cancellation the first mortgage; and (3) did not self-finance the sale.

José Medina-Ramos, et al v. Ron Moschetta-Carolyn, et al
Civil No. 10-1911 (CVR)
Opinion and Order
Page 8

The jury heard the factual versions of both parties, and gave credit to Plaintiffs' version. This is clearly enough to find for Plaintiffs, as the jury did. On these facts, the Court cannot overturn the jury's verdict. Accordingly, Defendants' request for a new trial is therefore DENIED.

### C.   **Request for Remittitur**.

Remittitur is said to be proper when no clear judicial error or pernicious influence can be identified, but when the verdict is so large as to shock the conscience of the court. See, *Federal Practice and Procedure*, Wright-Miller-Kane, Rule 59, § 2815. The Court must view the evidence in the light most favorable to the proponent of the verdict, and cannot disturb the jury's fashioning of an award "unless it is 'grossly excessive', 'inordinate', 'shocking to the conscience of the court' or 'so high that it would be a denial of justice to permit it to stand'. Segal v. Gilbert Color Sys., Inc., 746 F.2d 78, 80-81, (1st Cir. 1984) *accord* McDonald v. Federal Labs., Inc., 724 F.2d 243, 246 (1st Cir. 1984); LaForest v. Autoridad de Las Fuentes Fluviales de Puerto Rico, 536 F.2d 443, 447 (1st Cir. 1976).

Interestingly, Defendants do not argue the awards given by the jury are excessive, nor do they cite any case law to demonstrate why the awards in this case would "shock the conscience" of the Court. Instead, they argue the awards were the result of the jury's erroneous verdict in finding that they had breached the contract, because it was Plaintiffs who breached the contract. They further aver Plaintiff Tirado failed to present any expert testimony regarding her emotional condition. In the very next sentence, however, they then state that "while this [expert testimony] is not required to sustain an award for emotional distress, the absence of such evidence is useful in comparing the injury to the award of damages". (Docket No. 74, p. 20.)

José Medina-Ramos, et al v. Ron Moschetta-Carolyn, et al
Civil No. 10-1911 (CVR)
Opinion and Order
Page 9

The Court finds the awards in this case are rationally supported by the evidence presented at trial, and they fall squarely within the province of the jury. The jury decided to award Plaintiffs their initial investment of $115,000.00, and additionally awarded the nominal amount of $10,000.00 for Plaintiff Tirado's mental anguish. No damages were awarded to Plaintiff Medina. These numbers certainly do not shock the conscience and are not grossly excessive; they therefore need not to be disturbed. Hence, the request for remittitur is DENIED.

## CONCLUSION

For the foregoing reasons, Defendants' "Motion for Judgment as a Matter of Law Setting Aside the Jury's Verdict, or in the Alternative, a New Trial, or in the Alternative for Remittitur" (Docket No. 74) is DENIED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 1st day of December of 2014.

s/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ-RIVE
UNITED STATES MAGISTRATE JUDGE